IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>One Tower Square<br>Hartford, CT 06183<br><br>　　　　　　　　　　Plaintiff,<br><br>VS.<br><br>COPPERLEAF OF KANSAS CITY HOME OWNERS ASSOCIATION<br>200 NW Englewood Rd.<br>Gladstone, MO 64118<br><br>MARK ANDREW, an individual<br>9409 NE 93rd Terrace<br>Kansas City, MO 64157<br><br>　　　　　　　　　　Defendants. | Case No. 4:18-cv-00139 |

## COMPLAINT

COMES NOW Plaintiff Travelers Casualty and Surety Company of America ("Travelers") by and through its counsel, Litchfield Cavo, LLP, and alleges and states as follows:

Jurisdiction and Venue

1. Plaintiff Travelers is an insurance company incorporated in Connecticut and maintains its principal place of business in Hartford, Connecticut. Travelers is a citizen of Connecticut.

2. Defendant Copperleaf of Kansas City Homeowners Association, Inc. ("Copperleaf") is a homeowners association incorporated in Missouri with its principal place of business in Liberty, Missouri. Copperleaf is a citizen of Missouri.

1

3. Defendant Mark Andrew ("Andrew") is a resident of Kansas City, Missouri. Andrew is a citizen of Missouri.

4. This court has jurisdiction over this matter pursuant to 28 USC § 1332 as the Plaintiff and Defendants are citizens of different states and the value of the matter in controversy is greater than $75,000.

5. Venue is proper in this Court pursuant to 28 USC § 1391(b)(2) as a substantial part of the events or omissions giving rise to this declaratory judgment action occurred in this judicial district.

## The Travelers Policy

6. Travelers issued a Wrap+ Community Association Management Liability Coverage policy of insurance to Copperleaf bearing policy number 030-LB-106013021 ("the Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**.

7. The Policy has effective dates of 11/4/16 to 11/4/17.

8. The Policy provides a limit of liability of $1,000,000 for all Claims.

9. The Policy provides that Defense Expenses are included in the limit of liability and that Defense Expenses reduce the limit of liability.

10. The Policy contains a $5,000 Retention for all Claims under Insuring Agreements B, C or D, which applies to any Loss including Defense Expenses.

11. The Insuring Agreement in the Policy states, in relevant part, that Travelers:

[W]ill pay on behalf of:

A. the **Insured Persons**, **Loss** for **Directors and Officers Wrongful Acts**, except for **Loss** that the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

2

B. the **Insured Organization**, **Loss** for **Directors and Officers Wrongful Acts**, that the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

C. the **Insured Organization**, **Loss** for **Directors and Officers Wrongful Acts**,

that results from any **Directors and Officers Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period and reported in accordance with section V. CONDITIONS F. INSURED'S DUTIES IN THE EVENT OF A CLAIM.

(Exhibit A at p. 1 of 18).

12. The Policy defines a "Directors and Officers Claim" as:

1. a written demand for monetary damages or non-monetary relief;

2. a civil proceeding commenced by service of a complaint or similar pleading;

3. a criminal proceeding commenced by filing of charges;

4. a formal administrative or regulatory proceeding, commenced by a filing of a notice of charges, formal investigative order, service of summons or similar document;

5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld;

6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** for any **Directors and Officers Wrongful Act**.

. . .

**Directors and Officers Claim** does not mean any motion for, demand for, or award of, amounts from or against an Insured solely consisting of legal costs, whether or not including attorneys' fees, arising out of a legal proceeding or alternative dispute resolution proceeding or brought by an **Insured**.

(Exhibit A at p. 3 of 18).

3

13. The Policy defines a "Directors and Officers Wrongful Act" as:

   1. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, including any **Personal Injury** or **Publishers Liability**, or any matter asserted against, an **Insured Person** in his or her capacity as such;

   2. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, including any **Personal Injury** or **Publishers Liability**, the Insured Organization; or

   3. any matter asserted against an **Insured Person** solely by reason of his or her status as such.

   Provided that **Directors and Officers Wrongful Act** does not mean any **Employment Practices Wrongful Act**.

(Exhibit A at p. 3 of 18).

14. The Policy defines "Insured" as "the **Insured Person** and **Insured Organization**." (Exhibit A at p. 5 of 18).

15. The Policy defines "**Insured Organization**" as "**Insured Entity** and **Community Association Management Organization**." (Exhibit A at p. 5 of 18).

16. The Policy defines "Insured Person" as

   **Insured Person** means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors, or a functional equivalent thereof, member of a duly constituted committee, or volunteers of the **Insured Entity** or any **Executive Officer**. **Insured Person** also means any **Community Association Management**.

   In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(Exhibit A at p. 5 of 18).

17. The Policy defines "Related Wrongful Acts" as "all **Wrongful Acts** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision." (Exhibit A at p. 6 of 18).

18. With respect to Related Wrongful Acts, the Policy states:

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim**, whichever is applicable, for purposes of this **Community Association Management Liability Coverage Policy**. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made at the time the first of such **Claims** or **Potential Claims** for **Related Wrongful Acts** were made whether prior to or during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

(Exhibit A at p. 13 of 18).

19. The Policy contains the following condition:

**CHANGE OF CONTROL**

If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed after such event. No coverage will be available hereunder for **Loss**, including **Defense Expenses**, for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Wrongful Act** committed or allegedly committed after such event. After any such event, this **Community Association Management Liability Coverage Policy** may not be canceled by the **Named Insured** and the entire premium for the **Community Association Management Liability Coverage Policy** will be deemed fully earned.

(Ex. A at p. 14 of 18).

20. The Policy defines "Change of Control" as:

1. the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2. the obtaining by any person, entity or affiliated group of persons or entities the right to elect, appoint or designate more than 50% of the board of

directors, board of trustees, board of managers, or functional equivalent thereof or to exercise a majority control of the board of directors, board of trustees, board of managers, or a functional equivalent thereof of the **Named Insured**.

Litigation Among Copperleaf Board of Directors

21. The litigation underlying this coverage dispute is between two factions of individuals, including Copperleaf homeowners, each of which claim they constitute Copperleaf's Board of Directors.

22. The competing factions will be referred to throughout as Board 1 and Board 2. Board 1 refers to the Board of Directors that included James Peterson ("Peterson") as President. Board 2 refers to the Board of Directors that included Andrew as President.[1]

23. Litigation began on or about January 17, 2017, when Board 1, purportedly on behalf of Copperleaf, filed a lawsuit in the Circuit Court of Clay County, Missouri styled *Copperleaf of Kansas City Home Owners Association, Inc. v. John Sanderford, et al.*, Case No. 17CY-CV00494 ("Board 1 Lawsuit").

24. A First Amended Petition was filed in the Board 1 Lawsuit on January 25, 2017. A true and correct copy of the First Amended Petition in the Board 1 Lawsuit is attached hereto as **Exhibit B**. The Board 1 Lawsuit First Amended Petition contained the following allegations, among others:

    a. Certain homeowners in the Copperleaf development, including John Sanderford, Mark Andrew and six (6) additional named defendants, staged a "coup" to take over the Association's bank accounts.

---

[1] These references are intended to clarify the history of the underlying litigation only and in no way reflect Travelers' views with respect to which Board of Directors is the proper Board of Directors of Copperleaf.

b. At some time prior to January 16, 2017, Sanderford delivered an anonymous letter to members of the homeowners association regarding a meeting to be held on that same day.

c. A meeting was held on January 16, 2017 at the Liberty Community Center, at which time the existing Board of Directors (Board 1) was voted out and a new Board of Directors was elected consisting of Sanderford, Andrew, and others (Board 2).

d. On January 17, 2017, Andrew and Benjamin Brunker ("Brunker") went to the Community America Credit Union ("CACU") to secure control of the Copperleaf bank accounts held there.

25. The Board 1 Lawsuit contains four counts: declaratory judgment; injunctive relief; theft/conversion; and conspiracy.

26. On or about March 1, 2017, the defendants in the Board 1 Litigation filed a motion for temporary restraining order against Copperleaf seeking, in part, to bar Board 1 from holding a special meeting, amending the homeowner association bylaws, and voting to replace the defendants as the board of directors until the litigation concludes.

Interpleader Action

27. On April 26, 2017, CACU filed a Petition for Interpleader against Copperleaf, James Peterson, and Andrew in the Circuit Court of Clay County, Missouri (Case No. 17CY-CV03628) (the "Interpleader Action"). A true and correct copy of the Petition for Interpleader is attached hereto as **Exhibit C**.

28. The Petition for Interpleader contains the following allegations:

a. Copperleaf maintains three bank accounts with CACU which, at the time of the filing of the Underlying Complaint, contained a total of $314,300.29.

b. There is a dispute regarding the identities of the individuals who comprise the Board of Directors of Copperleaf, which impacted who could properly access the funds in Copperleaf's accounts with CACU.

c. Prior to January 16, 2017, Copperleaf's Board of Directors consisted of James Peterson, John Kornhaus, Jimmy Jack Clayton, and Trish Shriver (Board 1).

d. On or about January 17, 2017, CACU was presented with a document purporting to be a Corporate Resolution of Copperleaf that removed the previous Board of Directors and replaced it with Andrew, Brunker, Charles Moretina, Chad Elliott, Timothy Letsch, Gail Bradley, and Bradley Styles (Board 2).

e. On or about January 17, 2017, Andrew and Brunker requested that CACU change Copperleaf's accounts to reflect that Andrew and Brunker were now the authorized signatories.

f. On or about January 17, 2017, an attorney representing James Peterson and Board 1 told CACU that it was still in control of Copperleaf and asked CACU to change the authorized signatories back to James Peterson and John Kornhaus.

g. On January 17, 2017, Board 1, purporting to represent Copperleaf, filed a lawsuit against the members of Board 2 in the Circuit Court of Clay County, Missouri styled *Copperleaf of Kansas City Home Owners Association, Inc. v. John Sanderford, et al.* Case No. 17CY-CV00494. That lawsuit alleged that Board 2 had staged a coup in which it "wrongfully conducted a meeting, enacted the Resolution, and ousted Board 1."

h. Having received conflicting information from Board 1 and Board 2 regarding which Board was entitled to control the CACU accounts, CACU froze the accounts until Board 1 and Board 2 could present CACU with documentation showing the dispute over control of Copperleaf had been resolved.

i. CACU is prepared to release the funds in the accounts to Copperleaf, but cannot do so because of the potential for conflicting claims between Board 1 and Board 2.

29. In the Interpleader Action, CACU sought an order requiring CACU to tender the funds in its Copperleaf accounts to the court, close its accounts, and recover its attorney's fees related to the Interpleader Action.

### Claims Submitted to Travelers

30. By letter dated February 20, 2017, Travelers agreed to provide a defense to some of the defendants in the Board 1 Lawsuit under a reservation of rights.

31. Travelers did not provide a defense to John Sanderford in relation to the Board 1 Lawsuit, as he is not an Insured as defined by the Policy.

32. Travelers provided a defense under reservation of rights to Andrew and six other defendants in the Board 1 Lawsuit in their respective capacities as Insureds as defined by the Policy, meaning in their capacities as members of the Board of Directors.

33. Travelers stated that any allegations against those defendants that fell outside the scope of their roles as members of the Board of Directors may limit coverage.

34. Travelers retained the law firm of Brinker & Doyen L.L.P. to defend Andrew and the six other Board 1 Lawsuit defendants.

35. By letter dated May 3, 2017, Travelers agreed to provide a defense to Andrew in the Interpleader Action under a reservation of rights.

36. In that May 3, 2017 letter, Travelers stated its position that the Board 1 Lawsuit and the Interpleader Action are related claims under the Policy.

37. Travelers stated that Andrew's defense was limited to actions he took in his capacity as an Insured and did not extend to allegations of conduct that fell outside his role as a member of the Board of Directors.

38. Travelers assigned the same law firm, Brinker & Doyen L.L.P., to represent Andrew in the Interpleader Action.

39. By letter dated July 7, 2017, Travelers agreed to provide a defense under reservation of rights to Board 1 and James Peterson in his capacity as a Board Member in the Interpleader Action.

40. The July 7, 2017 letter also addressed a motion for an order to show cause and for civil contempt ("Contempt Motion") filed by the defendants in the Board 1 Lawsuit.

41. As of July 7, 2017, the Contempt Motion had been denied and the Board 1 Lawsuit had been dismissed without prejudice.

42. Travelers agreed to pay the costs of the Kessinger Law Firm, PC to represent Board 1 and James Peterson in the Interpleader Action.

Previous Lawsuit

43. This is the second time this coverage dispute has been before this Court.

44. On September 7, 2017, Copperleaf filed a Complaint for Declaratory Judgment and Other Relief ("Prior Complaint") against Travelers captioned *Copperleaf of Kansas City*

10

*Home Owners Association, Inc. v. Travelers Casualty and Surety Company of America*, case no. 17-0749-CV-W-BP (W.D. Mo.).

45. Copperleaf's Prior Complaint sought, in relevant part, to enjoin Travelers from providing a defense to Andrew in the Interpleader Action.

46. Travelers filed a motion to dismiss the Prior Complaint, arguing that Andrew was a necessary and indispensable party who could not be joined to the litigation because it would deprive the Court of diversity jurisdiction.

47. On November 27, 2017 the Court granted Travelers' motion to dismiss for failure to join Andrew, a necessary and indispensable party to the litigation.

48. Because the coverage issue has not been resolved, Travelers is seeking a declaration in order to properly resolve this coverage dispute among all of the necessary parties.

## **COUNT I: DECLARATORY JUDGMENT (DUTY TO DEFEND)**

49. Travelers incorporates and re-alleges paragraphs 1-48 as if fully set forth herein.

50. In the Previous Lawsuit, Copperleaf challenged Travelers' provision of a defense to Andrew in the Board 1 Litigation and the Interpleader Action.

51. Copperleaf asserts that Travelers breached the Policy by providing a defense to Andrew in the Board 1 Litigation and the Interpleader Action.

52. Copperleaf's primary contention is that there was a "Change of Control" that terminated any obligation that Travelers would otherwise have had in relation to Andrew.

53. Travelers denies that there was a "Change of Control" that would preclude its defense obligation.

54. Copperleaf further asserts that Travelers breached the policy when it funded certain actions taken by Andrew's defense counsel.

55. Travelers denies that it breached the Policy or has done anything improper.

56. Copperleaf has demanded that Travelers terminate the defense being provided to Andrew.

57. Travelers has been placed in the position of having to choose between Copperleaf's demands and accusations of breach of contract and Andrew's demand for policy benefits as an alleged insured.

58. There is a dispute over Travelers' duty to defend Andrew in the Interpleader Action and Travelers' funding of certain tasks performed by Andrews' counsel. Travelers seeks a declaration resolving these issues and its obligations under the Policy in relation to Andrew and the Interpleader Action.

WHEREFORE, Travelers requests that this Court issue an order declaring whether Travelers has a duty to defend Andrew in relation to the Interpleader Action.

Respectfully submitted,

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

By: /s/Kevin P. Clark_____

Kevin P. Clark, #53811
LITCHFIELD CAVO, LLP
222 S. Central, Suite 200
Clayton, MO 63105
(314) 725-1227 phone
(314) 725-3006 fax
**Attorneys for Plaintiff**